McJilton v. Smizer.

———— ·•◦•· ————

McJILTON, Plaintiff in Error, vs. SMIZER, Defendant in Error.

1. A tender of articles by a debtor to his creditor, at the time and place specified, will not vest the property in the creditor, so as to discharge the debtor, and relieve him from all further care of the property. He must keep the property ready to be delivered on demand, at the risk, however, of the creditor. To constitute a valid tender, the property to be delivered must be designated and set apart.

*Error to St. Louis Court of Common Pleas.*

This was an action to recover the sum of one hundred and thirty dollars, which had been paid by the plaintiff, to take up a bill of exchange, alleged to have been accepted by him for the accommodation of the defendant. The answer of the defendant stated that the bill was drawn under a contract between the parties, by which the defendant agreed to cut and place on the banks of the Maramec, a certain quantity of wood for the

plaintiff; that this bill was an advance under that contract, and that defendant did cut and place on the banks of the Maramec wood enough to liquidate the amount of the bill.

On the trial, Anthony Bennett, for the plaintiff, testified that the bill was accepted by the plaintiff, and endorsed by him (witness,) for the benefit of the defendant, who raised the money on it; that both the plaintiff and witness had separate contracts with defendant for wood, and it was agreed that, if the wood was furnished on the Maramec, and the state of navigation was such as to allow it to be brought to St. Louis, the bill was to be taken up by the party receiving the wood; that, at the maturity of the bill, in March, 1850, defendant came to St. Louis and tried to raise money to take it up, but did not succeed, and witness and plaintiff took it up, each paying one hundred and thirty dollars, the amount of the bill being two hundred and sixty dollars. In the latter part of April, 1850, witness sent boats to the Maramec, and brought away all the wood that was then cut, being about one hundred and eighty cords, for which he has settled with defendant and paid him in full, defendant allowing for the $130 paid by witness on the bill. Navigation opened that year about April 1.

The defendant then read the wood contract mentioned in his answer; also a letter from plaintiff dated January 20, 1850, tending to show that plaintiff had received letters from the defendant to the effect that wood was ready for him on the Maramec, according to the contract. The defendant also introduced evidence to show that there was good navigation on the Maramec all the time after January 1, 1850, and that they observed, at different times during the winter, a large pile of wood at Smizer's yard. No measurement was made; some thought there might have been three or four hundred cords, others two hundred cords; the quantity varied; sometimes there was no more than twenty-five cords.

Plaintiff, in reply, called a witness who testified that he went after Bennett's wood in April, and took all there was then there (one hundred and eighty cords) and two boats came back empty.

The court gave the following instruction, among others :

" If the jury find that plaintiff was to take up the draft, provided defendant had wood cut sufficient to meet the same and deposited on the bank of the Maramec, and the river was open for navigation, in time to bring the same to St. Louis, and that the wood was cut and deposited, and the river open, they will find for defendant."

The following instructions, asked by the plaintiff, were refused :

1. If all the wood cut and placed on the bank of the Maramec during the year 1850, by defendant, has been disposed of by defendant, and the price received by him, he is not entitled to avail himself of the fact of cutting and placing said wood on the bank of the Maramec, as a defence to this action.

2. Should the jury find that the one hundred and thirty dollars was paid as an advance under the contract, and in fact no wood has been received under the contract, and defendant has actually disposed of all his wood to other parties and received the price thereof, then the consideration of plaintiff's advance has failed, and he is entitled to recover in this action.

There was a verdict and judgment for the defendant.

*R. M. Field*, for plaintiff in error. 1. The court below erred in deciding that the contract for wood would be satisfied by the fact that the defendant had, at the place appointed, a large quantity, indefinite in amount, but sufficient to satisfy the contract. The authorities are clear that the party must separate and set apart the wood that is to be applied in satisfaction of the contract, or it will be no defence. *Smith* v. *Loomis*, 7 Conn. 110. *Barnes* v. *Graham*, 4 Cow. 452. *Veazie* v. *Harmony*, 7 Greenl. 91. *Wyman* v. *Winslow*, 2 Fairf. 398. 2. The court below erred in refusing plaintiff's instructions. In fact it will be seen that, under the law as expounded by the court below, the defendant has paid his debt to the plaintiff with wood which the defendant has also sold for cash paid to himself.

*W. L. Williams* and *S. T. Glover*, for defendant in error.

Under the evidence, the plaintiff was not liable to recover on the bill of exchange, but his action should have been for the wood or its value, if it had been converted by defendant to his own use. There was sufficient delivery to confer property, and the plaintiff should have followed the wood.

SCOTT, Judge, delivered the opinion of the court.

1. It is a little remarkable that the law of contracts, for the payment and delivery of specific articles, should be a matter of discussion at this day. There is a contrariety of opinion in the books and in the opinions of courts in relation to the effect of a tender, or a readiness, at the time and place appointed, to deliver property in pursuance to a contract. One difficulty is in relation to the effect of a tender. Whether a tender should be pleaded with a readiness still to perform, or will a tender vest the property tendered in the creditor and discharge the debtor or obligor from all future concern for the articles tendered, or is the debtor bound, notwithstanding a refusal, to take care of the property at the risk and expense of the creditor, so as to have it ready for him in the event of a subsequent demand. A similar difficulty arises in case a debtor is ready, at the time and place appointed, to perform his contract and the creditor does not attend : can he abandon the property and insist on his discharge, or must he still retain it, so that if there should be a subsequent demand, he may be ready to deliver it, holding it, of course, at the risk and expense of the creditor ?

Chancellor Kent inclines to the opinion that, on a valid tender of specific articles, the debtor is discharged from his contract and the right of property in the articles tendered passes to the creditor. The debtor may abandon the goods so tendered ; but if he elects to retain possession of the goods, it is in the character of bailee to the creditor and at his risk and expense. 2 Kent, 508. This seems to be the law of the courts of Kentucky. 1 Bibb, 452. On the other hand, it is main-

tained in the state of Pennsylvania, that, in an action upon a note for the payment of a certain sum, it is not necessary to the maintenance of the plaintiff's action, that he should have made a demand of the articles at the time and place, but to defeat the plaintiff's action the defendant must prove that he was ready, at the time and place, and *continued ready*. 7 Watts, 380.

The general principle of the common law is, that the property tendered or ready to be delivered belongs to the creditor, if his debt is thereby discharged; that is, if, on an issue taken on the plea of tender, it should be found against him. 3 John. Cas. 243. Anciently most undertakings for the payment of money or property were in the shape of penal bonds, and by the old common law, if there was a breach of the condition of a bond, the whole penalty was forfeited and might be recovered in an action at law. This form of instrument being oppressive to the debtor, the courts held creditors to great strictness, and made an exception to the general rule above stated, and maintained that, if the articles tendered, according to the terms of the condition, were not accepted, the penalty of the bond was saved, the debtor or obligor was discharged, and the thing tendered was forfeited, and the creditor left without remedy, either on the contract or for the thing tendered. When the condition of the bond was for the payment of a less sum in money, the money tendered was brought into court, and the plaintiff had an option either to take the money tendered and thus put an end to the suit, or he might take issue on the tender, and if it was found against him, the defendant took the money brought into court and the plaintiff lost his debt forever. But the ancient law is now changed, as well by the interposition of courts of equity as by the authoritative interference of the statute of 8 and 9 Wm. and M., which has been reënacted in our code, which makes a penal bond a mere surety for the sum really due or for the damages actually sustained. So that at this day, a tender in performance of the condition of a penal bond, and a tender in performance of a simple con-

tract, are perfectly analogous ; and if the debtor will avail himself of a plea of tender, or plea that he was ready at the time and place to perform his contract, he must, in all cases, keep the thing tendered or ready to be delivered for the creditor, and deliver it to him on demand. By the old law, there was no difference between a tender of money and a tender of specific articles, except there must be a profert of the one and an excuse for want of profert of the other, unless it appears from their description that the articles are of a nature which will not admit a profert. Both must be pleaded with an *uncore prist.* 2 Rolle's Abr. 524. Bacon, tit. Tender. The instances put to the contrary of this in Peyton's case, 9 Coke, are all cases arising under penal obligations, which were formerly influenced by the considerations above stated. The confusion in the law has arisen from confounding old cases arising on penal bonds and those in which there was a contract for the delivery of specific articles. Chipman, after an able essay on the law of contracts for the payment of specific articles, deduces the following propositions from the various cases which underwent his review in writing his work. If the defendant plead a tender and refusal, the plaintiff may traverse the tender, or reply a demand and refusal. If the defendant plead that he was ready, at the time and place, and that the plaintiff did not attend, the plaintiff may traverse the fact that the defendant was ready, or reply a demand and refusal.

The defendant may traverse the demand and refusal, and if the demand and refusal be proved, the issue will be found for the plaintiff, unless the defendant show some valid excuse for not delivering the property, as that the property was lost without any fault of his, or sold to defray the expense of keeping. The property of the articles tendered or ready to be delivered, is not vested in the creditor until accepted by him, but the property remains in the debtor, and the articles are at his disposal as before ; nor can the creditor ever acquire a property in them without a subsequent assent of the debtor.

If judgment be rendered for the plaintiff on the plea of a

McJilton *v.* Smizer.

demand and refusal, he will recover his demand and the property of the articles tendered will remain in the defendant, unaffected by such tender ; but if judgment be rendered for the defendant, the debt is thereby discharged and the property of the articles tendered is vested in the plaintiff, in the condition in which they may be, and subject to such lien as the defendant may have on them, for the expense of keeping ; and if the defendant shall thereafter refuse to deliver them to the plaintiff, on demand, he will be liable to an action of trover, if his refusal shall appear to have been wrongful. The pleas in relation to this subject must contain a description of the property, and the articles must be properly designated and set apart, when necessary, in order to make a tender. If they remain in an aggregate mass or are not designated, there can be no lawful tender.

From an examination of the law on this subject, we are satisfied that the rule above stated best harmonizes with the interests of society, and is more conformable to that standard of propriety to which man, in his intercourse with his fellow man, should conform. There is no hardship in this when the law is once properly understood. In the conflict of opinion on this subject, we have felt free to adopt that view which most effectually protects the interests of both parties to the contract, which, in its tendency, checks the inclination of one party to get an advantage at the expense of the other, and to obviate the effect of that ill-will which is too often engendered from no other cause than an obligation to comply with a just contract. By removing the means of obtaining an unfair advantage, strife and litigation will be avoided. The other judges content, the judgment is reversed and the cause remanded.